UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DUAN L. WILLIAMS, #1115208,

                    Petitioner,

v.                                                        ACTION NO.  2:17cv564

H.W. CLARKE,
*Dir. Va. D.O.C.*,

                    Respondent.

UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

This matter is before the Court on Duan L. Williams' *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and the respondent's motion to dismiss.  This matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia.  For the following reasons, the Court **RECOMMENDS** that respondent's motion to dismiss, ECF No. 5, be **GRANTED**.

I.       STATEMENT OF THE CASE

Duan L. Williams ("Williams") is an inmate currently housed at Sussex I State Prison, part of the Virginia Department of Corrections.  ECF No. 1 at 1.  After a bench trial in the Circuit Court for the City of Virginia Beach, Williams was convicted on September 30, 2014 of sexual penetration with an object, malicious wounding, assault and battery against a family member, third offense, and petit larceny.  *Id*. at 1.  He was sentenced on January 21, 2015 to a term of life imprisonment on the sexual penetration charge, 20 years imprisonment on the

malicious wounding charge, 5 years imprisonment on the assault and battery charge, and 12 months in jail on the petit larceny charge. *Id.* at 1; *Commonwealth v. Williams*, No. CR13-3532, CR13-4706, sentencing order at 2 (Va. Cir. Jan. 29, 2015).

Williams appealed his conviction to the Court of Appeals of Virginia. ECF No. 1 at 2. The appellate court summarized the evidence in the case as follows:

> [T]he evidence proved that the victim and [Williams] were in an on-again off-again romantic relationship. The victim testified on December 25, 2008, they were at her house, they argued, and she told [Williams] that she no longer wanted to be with him. The victim testified she went to a closet, removed his shotgun, and threw it on the floor. The victim testified as she put her knee up on her bed, she felt an object in her rectum. The victim testified [Williams] looked at her injury and said they needed to go to the hospital. The victim testified she was wearing jogging pants, but [Williams] gave her a different pair of pants to wear to the hospital. The victim testified [Williams] drove her to the hospital. The victim admitted she initially told the hospital staff that she was injured with a pole while having rough consensual sex. The victim explained that she lied to the hospital staff about the cause of her injury because she was scared of [Williams]. The victim needed to have her injuries surgically repaired. The victim testified she went to her mother's house after she was discharged from the hospital, but she eventually returned to her house. The Commonwealth brought charges against [Williams] in 2009, the victim testified she did not want to follow through with the charges, and the Commonwealth withdrew the charges. Later, the victim and [Williams] resumed a relationship and the victim had a child with [Williams] in 2009.
>
> The victim testified on June 6, 2013, she was in the shower and [Williams] tried to get in the shower. The victim testified she did not want him in the shower and they argued. The victim testified [Williams] choked her and their four-year-old son entered the bathroom. The victim testified [Williams] pushed their son out of the bathroom and she told [Williams] she did want to continue a relationship with him. The victim testified she slipped while exiting the shower and [Williams] punched her in the eye. The victim testified her fifteen-year-old daughter entered the bathroom. The victim was admitted to the hospital for treatment. The victim testified she resumed a relationship with [Williams] after she was discharged from the hospital. Photographs of the victim's injuries for the 2013 assault were admitted into evidence.[1]

---

[1] The victim testified [Williams] punched her in the right eye, but after reviewing the photographs, the victim testified he punched her in the left eye. [Footnote in original].

The victim testified she continued a relationship with [Williams] after the June 6, 2013 assault and she permitted [Williams] to use her vehicle. After an altercation on July 24, 2013, the victim ended her relationship with [Williams], the victim asked [Williams] for the keys to her vehicle, and she took the keys from him, but he took the keys from her. [Williams] never returned the keys to the victim, and the victim called him numerous times in an attempt to retrieve the keys.[2] The victim filed charges for the June 2013 incident on July 24, 2013.

Dr. Joseph McDermott, a trauma surgeon, testified he provided medical care to the victim on December 25, 2008 and she sustained an injury to her rectum, vagina, bladder, and intra-abdominal area. Dr. McDermott testified additional specialists treated the victim for the injuries. Dr. McDermott testified he found a piece of the victim's clothing within the victim's abdominal cavity.

The trial judge admitted into evidence phone calls [Williams] made from jail on February 26, 2014. In the call there was a discussion as to whether [Williams'] sister or his cousin could be his alibi witness for the 2013 assault charge. When discussing the 2008 malicious wounding charge, [Williams] stated he could not get out of that one because it happened.

Audra Carroll, the mother of two of [Williams'] children, testified at approximately 9:00 p.m. on June 6, 2013, she picked up [Williams] at a Wal-Mart located near his sister's house.

[Williams] testified on December 25, 2008, the victim jumped on his back while he was watching television, he carried her "like a piggyback ride," and he placed her on a kitchen chair. [Williams] testified the back of the chair was broken except for one spindle and the spindle went inside her rectum when he placed her on the chair. [Williams] testified he drove the victim to the hospital and he brought her inside, but left to move the car from the front of the hospital. [Williams] testified when he returned, hospital staff told him the victim was not at the hospital and he left. [Williams] testified he never physically abused the victim and the December 25, 2008 injury was due to an accident. [Williams] testified on June 6, 2013, he was getting ready for work, they argued, he left, the victim called him, and the victim accused him of seeing another female. According to [Williams], he did not assault the victim in the bathroom and he was at his sister's house at the time the victim testified the assault occurred. [Williams] testified he decided he had enough and he returned to the victim's house with his cousin Nita. [Williams] testified he gathered his belongings and he threw the keys to the victim's vehicle somewhere in the house. [Williams] testified he went to his sister's house after work, which was at approximately 5:00 p.m., and Carroll picked him up at approximately 9:00 p.m. [Williams] admitted he was a convicted felon.

_____

[2] The petit larceny conviction was based on the theft of the keys. [Footnote in original].

3

*Williams v. Commonwealth*, No. 0131-15-1, at 6–8 (Va. App. Aug. 5, 2015) [hereinafter "Va. App."[3]].

The court of appeals denied Williams' appeal on August 5, 2015. *Id*. at 5–10. Williams filed a request for a three-judge panel. *Id*. at 11–12, 16–17. A three-judge panel denied Williams' appeal on September 24, 2015. *Id*. at 19. Williams appealed his case to the Supreme Court of Virginia, which refused his appeal on March 29, 2016. ECF No. 1 at 2–3. Williams did not file for a writ of certiorari with the United States Supreme Court. *Id*. at 3.

Williams filed a petition for a writ of habeas corpus in the Supreme Court of Virginia on November 21, 2016. *Id*. The Virginia Supreme Court dismissed his habeas petition on July 18, 2017. *Id*.

Williams timely placed the pending federal petition for a writ of habeas corpus in the prison mailing system on October 18, 2017. *Id*. at 15. Williams presents the following grounds for relief: (1) the trial court erred in finding the evidence sufficient to prove guilt beyond a reasonable doubt; (2) the trial court erred in denying a motion to set aside the verdict and abused its discretion in imposing a lengthy, combined sentence in the face of discrepancies in the victim's testimony; (3) the prosecutor failed to provide Williams with requested exculpatory evidence; and (4) Williams' trial counsel was ineffective. *Id*. at 16–24. Williams argues his trial counsel, Trevor Robinson, Esq., ("Robinson") was ineffective for: (a) not challenging the Commonwealth's discovery response that the defense had been provided with a copy of "Tellamy Street's medical records"; (b) not contesting the Commonwealth disclosing excerpts of the victim's interview rather than the complete interview; (c) failing to obtain exculpatory

---

[3] "Va. App." refers to the paper record provided to the Court by the Virginia Court of Appeals, with pages numbered 1–28 in the bottom right corner. *Williams v. Commonwealth*, No. 0131-15-1 (Va. App.).

evidence regarding the victim's reluctance to prosecute the 2008 incident; (d) not effectively impeaching the victim's testimony; (e) not objecting to the introduction of statements by the victim's therapist; (f) not properly consulting with Williams about the decision not to challenge the victim's allegations that Williams had raped her on numerous occasions, about the decision not to compel discovery of the entire victim interview, about the decision not to subpoena Sherry Morris, or about the decision not to subpoena a detective who had expressed doubt about the object used to cause the victim's 2008 injuries. *Id.* at 22–24; *see also* ECF No. 7-1 at 3–4.

On January 3, 2018, respondent filed an answer to the petition pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts and a motion to dismiss the petition, along with a supporting memorandum.[4]  ECF Nos. 5–7.  On February 9, 2018, after receiving an extension of time, Williams filed a response to the motion to dismiss.  ECF No. 10–11.

## II.    ANALYSIS

### A.    Standard of Review

When a claim has been properly exhausted and adjudicated on the merits in state court, this Court assesses the state court adjudication pursuant to 28 U.S.C. § 2254(d), rather than reviewing the merits of such a claim *de novo*.  Section 2254(d) provides that a federal court may not grant relief on any claim that was adjudicated on its merits in state court, unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[4] The motion to dismiss included a separately filed notice, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K), providing Williams with notice of how to timely respond thereto and the potential consequences for failing to do so.  ECF No. 8.

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court decision is "contrary to" clearly established federal law when a state court applies a rule different from the governing law articulated by the United States Supreme Court or arrives at a conclusion opposite that of the Supreme Court on materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citation omitted); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A state court decision constitutes an "unreasonable application" of federal law when the court identifies the correct governing legal principle from the decisions of the Supreme Court, but unreasonably applies that principle to the facts of the case. *Williams*, 529 U.S. at 413; *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that an unreasonable "application of clearly established law must be objectively unreasonable," rather than simply "incorrect or erroneous"). Stated differently, a "prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

"For a state court's factual determination to be unreasonable under [section] 2254(d)(2), it must be more than merely incorrect or erroneous. It must be sufficiently against the weight of the evidence that it is objectively unreasonable." *Winston v. Kelly*, 592 F.3d 535, 554 (4th Cir. 2010) (citations omitted). Pursuant to this deferential standard of review, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Williams*, 529 U.S. at 389.

**B.    Williams has not established that the appellate court's decision that the evidence was sufficient to support his conviction was an unreasonable determination of the facts in light of the evidence presented.**

In ground one, Williams argues that the evidence presented at trial was insufficient to support a finding that he was guilty beyond a reasonable doubt in violation of his Fourteenth Amendment due process rights. ECF No. 1 at 16–19. Specifically, Williams argues that the trial court did not adequately account for inconsistencies in the victim's statements regarding the sexual penetration and malicious wounding incident in 2008, and the assault and battery incident in 2013. *Id.*

On a sufficiency of the evidence claim, habeas relief is unavailable unless "no rational trier of fact could have agreed with the [trial judge]." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*). "What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Id.*

The Court examines the last reasoned decision addressing ground one. *Grueninger v. Dir., Va. Dep't of Corrections*, 813 F.3d 517, 525 (4th Cir. 2016) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (federal habeas courts should presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground")). In this case, the Supreme Court of Virginia, on collateral review, rejected ground one because it was raised and decided on direct appeal. *Williams v. Clarke*, No. 16717, at 286 (Va. July 18, 2017) (hereinafter "R.").[5]

---

[5] "R." refers to the record provided to this Court by the Supreme Court of Virginia and includes, among other things, a full transcript of the trial, a full transcript of the sentencing hearing, and the habeas decision by that court. The pages are numbered 1–292 in the bottom left corner.

Therefore, the Virginia Court of Appeals was the last court to provide reasons addressing the sufficiency of the evidence.

Section 18.2-67.2 of the Virginia Code provides that an individual is guilty of sexual penetration with an object "if he or she penetrates the labia majora or anus of a complaining witness, whether or not his or her spouse, other than for a bona fide medical purpose," and the "act is accomplished against the will of the complaining witness, by force. . . ." Va. Code Ann. § 18.2-67.2.  A person is guilty of malicious wounding when he or she "maliciously . . . wound[s] any person or by any means cause[s her] bodily injury, with the intent to maim, disfigure, disable, or kill." Va. Code Ann. § 18.2-51.

The court of appeals stated that "[w]hile the victim made statements that were inconsistent with her testimony, the victim explained she was scared of" Williams.  Va. App. at 8.  The court of appeals also held that the Commonwealth presented competent evidence that "was not inherently incredible," and was sufficient to prove Williams' guilt beyond a reasonable doubt. *Id*.

Williams' due process challenge to the sufficiency of the evidence rests on 28 U.S.C. § 2254(d)(2), and the claim that the appellate court made an unreasonable determination of the facts in light of the evidence presented when it upheld the trial court's convictions.  Williams argues that the trial court improperly assessed the credibility of the witnesses, and essentially asks this Court to reassess the respective witnesses' credibility without the benefit of having been present at trial.  Given the layers of deference afforded to a state court's decision, the Court is reluctant to do so, absent compelling reason. *Cf. Harrington v. Richter*, 562 U.S. 86, 105 (2011) (stating that, when two deferential standards both apply, review is "doubly" deferential). Williams has failed to provide that compelling reason.

8

Williams' attacks on the victim's credibility are two-fold.  First, he attempts to highlight inconsistencies in her statements about the conduct resulting in Williams' convictions.  Second, he attempts to highlight inconsistent statements about events unrelated to the underlying offenses, which he offers to show the victim's untruthfulness generally.[6]  In this case, with respect to credibility, the trial judge stated to Williams, "to be perfectly frank with you, I didn't find you to be credible at all. . . . [Williams' testimony] was incredible based on the evidence."  R. 247.  The trial judge continued, stating that he found the victim to be credible.  *Id*.  The trial judge, with his opportunity to observe testimony, is far better equipped to consider the general credibility of witnesses than a federal habeas court reading a transcript nearly four years later.  The court of appeals recognized this in finding the Commonwealth's evidence "not inherently incredible."  Va. App. at 8.  Accordingly, the Court will primarily focus on those statements of the victim related to the offenses of which Williams was actually convicted.

Williams points out that the victim originally told the hospital staff that she was injured during consensual sex.[7]  ECF No. 1 at 17.  In her original interview with law enforcement, the victim stated that Williams had pressured her to claim that the injury occurred during consensual sex because "he had time over his head, and he was sorry."  ECF No. 11 at 58.  At trial, she

---

[6] For example, Williams claims that the victim lied in testifying that Williams broke her ribs on a separate occasion, choked her on several occasions, and raped her on several occasions.  ECF No. 11 at 6, 9.  He also claims that she lied when she claimed in a protective order that he tortured her with box cutters.  *Id*. at 6, 64.  Williams argues that the lack of medical evidence related to these incidents reveals these assertions to be lies.  *Id*.  Williams was never charged with any offense related to these incidents, and their veracity has not been tested in a court of law.

[7] Williams testified at trial that the victim was injured by a broken chair.  R. 213.  He did not contend at trial that the victim was actually injured during consensual sex.  In his opposition to the motion to dismiss, he states that "medical records reveal her injuries were caused by a pole and consensual sex."  ECF No. 11 at 7, 38.  Later, he continues the same narrative he presented at trial, that she was injured by a broken chair during "horse play."  ECF No. 11 at 12–13.  Thus, while arguing that the victim's testimony was inconsistent, Williams himself takes inconsistent positions with respect to what happened that night.

admitted to telling the hospital that she was injured during sex, "[b]ecause [she] was scared" of Williams. R. 138. The victim's contrasting statements were on full display for the trial court, along with the victim's explanation for the inconsistency. It was not objectively unreasonable for the appellate court to credit the victim's explanation that she was afraid of Williams and uphold the trial court's convictions. *See* Va. App. at 8 ("While the victim made statements that were inconsistent with her testimony, the victim explained that she was scared of" Williams.).

Williams also focuses on the two interviews the victim gave to law enforcement in 2009 after the incident giving rise to the sexual penetration and malicious wounding charges. ECF No. 7-1 at 5–6. In her second interview with law enforcement, the victim stated that the firearm was propped up next to the bed. *Id.* at 6. At the 2014 trial, she testified that she retrieved the firearm from the closet and "tossed it" on the floor. R. 133; *see* ECF No. 11 at 7. The appellate court was not unreasonable in upholding the trial court's determination that, notwithstanding this mild inconsistency in statements separated by a period of years, the evidence still sufficiently established that Williams then used that firearm to penetrate the victim.

Williams also argues that the interviewing detective did not believe the victim's narrative. ECF No. 11 at 7. The victim originally told the detective that she "thought it might be a firearm." ECF No. 7-1 at 5. During her second interview, she initially stated that "it was probably a firearm." *Id.* at 6. Both times, the detective pressed her further, wondering "if it could have possibly been an umbrella," and noting that he "was just trying to figure out what Williams must have used that could have . . . done so much damage." *Id.* at 5–6. The victim finally admitted that she saw the firearm, but was afraid to admit to knowledge of a firearm in

the home for fear of losing her section eight housing.[8]  *Id*. at 6.  She then stated it was Williams' firearm and that he brought it on her property.  *Id*.  There is no indication in the detective's report that he disbelieved the victim's claim that it was a firearm after her plausible explanation.  The detective also did not testify at trial.  Moreover, even if Williams had used an umbrella rather than a shotgun, it would have had no material effect upon the conviction for sexual penetration with an object.  Williams' claim that the detective did not believe the victim's statement does not support a finding that the evidence was insufficient to support a conviction.[9]

The victim also testified that she had to wear a colostomy bag following the 2008 incident.  R. 139–40.  However, Joseph McDermott, M.D., the general surgeon who operated on the victim that night, testified that she did not have a colostomy bag.  R. 186.  While this testimony is inconsistent, it has no bearing on whether the convicted offense actually occurred and provides little support for a sufficiency of the evidence claim.

Finally, Williams argues that the victim could not remember which eye Williams injured during the 2013 incident.  ECF No. 11 at 8.  When asked at trial which eye Williams struck, she pointed to her right eye.  R. 142.  The Commonwealth introduced six photographs taken of the victim at the hospital.  R. 144–46.  The photographs indicated that it was in fact the victim's left

---

[8] Section 8 of the U.S. Housing Act of 1937 establishes a program whereby the United States Department of Housing and Urban Development provides affordable housing for low income households.    Housing and Urban Development, *Section 8 Rental Certificate Program*, https://www.hud.gov/programdescription/cert8 (last visited June 29, 2018).

[9] Williams also argues several times that, if the victim had seen the shotgun, she should have been able to describe it at trial, but was unable to do so.  ECF No. 11 at 7; *see* R. 154.  The victim described the gun at trial as "a long shotgun," but could not provide other details.  R. 154–55.  Again, whether it was a shotgun, umbrella, or other object is not especially relevant to the offense of conviction.  Moreover, it is not inherently suspect that the victim would not be able to remember specific details about a gun she had last seen seven years prior.  This lack of memory is not enough to render unreasonable the court of appeals' determination that the evidence was sufficient to support the convictions.

eye that was injured. R. at 145–46. The victim testified to this after using the pictures to refresh her recollection. *Id*. The pictures indicate that the victim was in fact injured, and her mixing up which eye does not render unreasonable the court of appeals' determination that the Commonwealth presented competent evidence that "was not inherently incredible."[10]

While Williams repeatedly states that the victim's testimony was the only evidence presented against him, other witnesses corroborated the victim's account. With respect to the assault and battery offense, the victim's son testified that he was called by his mother on June 6, 2013, and rushed to her home, where he crossed paths with Williams.[11] R. 169–70. He testified that the victim was "distraught [and] really disoriented. She was holding her eye trying to get clothes on so she could quickly rush herself to the hospital." R. 170. As to the shotgun incident, Dr. McDermott, while not confirming the victim's testimony about a colostomy bag, testified that her injuries required surgery and that he found the victim's clothing inside her abdominal cavity. R. 182–88. He compared her injuries to a bullet wound, and stated that it would require a lot of force to cause such injuries, because "these organs[12] are inside of the body so they are well protected. So it would take a fair amount of energy to injure all of them at once." *Id*. at 183. The court of appeals could reasonably uphold the trial court's conclusion that such

---

[10] Williams makes further arguments about the logic behind the victim's actions. He argues that, if he were truly so violent, she would not have stayed with him and would not have tossed a shotgun on the floor during an argument. ECF No. 11 at 15. There was evidence at trial, both in the form of testimony and exhibits, ECF No. 7-1 at 17, that the victim was afraid to leave Williams and/or believed that he would change. It was reasonable for the appellate court to credit this evidence. *See* Va. App. at 8. Moreover, such speculative psychoanalysis is easy to engage in and can cut both ways, to wit, if the victim were accidentally injured by a chair, it would be exceedingly odd to tell hospital staff she was injured having rough sex.

[11] Williams testified that he was not with the victim on June 6, 2013. R. 225. He testified on direct-examination that he was at his sister's house. *Id*. On cross-examination, he testified that he was with his cousin. R. 231. Neither appeared to testify on his behalf.

[12] The victim sustained injuries to her rectum, vagina, bladder, and abdominal area. R. 182.

testimony was more consistent with deliberate force being used than the accident Williams described. Finally, the Commonwealth introduced telephone calls made by Williams from jail on February 26 and February 28, 2014. R. 188–89. During those phone calls, Williams reportedly said of the malicious wounding charge that he could not get out of it because it happened.[13] R. 226. It was reasonable for the appellate court to uphold the trial court's determination that this evidence was sufficient to support the convictions beyond a reasonable doubt.

For the foregoing reasons, Williams has not shown that the state court made an unreasonable determination of the facts in light of the evidence presented. In light thereof, the alleged due process claim is without merit, and habeas relief is inappropriate.

**C.      Williams has not shown that the court of appeals' decision to uphold the denial of his motion to set aside the verdict and his sentence was contrary to, or an unreasonable application of, clearly established federal law, nor that it represented an unreasonable determination of the facts.**

In ground two, Williams argues that the trial court erred in denying his motion to set aside the verdict and that it abused its discretion when it imposed its sentence, due to the discrepancies in the victim's testimony and the evidence presented at trial. ECF No. 1 at 19–21.

Virginia Code section 8.01-680 provides in part:

When a case, civil or criminal, . . . is decided by a court without the intervention of a jury and a party objects to the decision on the ground that it is contrary to the evidence, the judgment of the trial court shall not be set aside unless it appears

---

[13] On direct examination, Williams explained what he meant by that statement: "The only reason I said it on the call is I can't get out on probation because of the way it happened. She jumped on my back and the way I backpedaled and set her in the chair, it was an accident. It happened. I can't get out of that." R. 226. An accident as Williams describes would be missing the vital intent component of malicious wounding, and it was not an unreasonable determination of the facts for the court of appeals to uphold the trial court's use of Occam's Razor:  when Williams admitted the malicious wounding "happened," he was admitting that it happened.

from the evidence that such judgment is plainly wrong or without evidence to support it.

Va. Code Ann. § 8.01-680. Section 8.01-680 adds another layer of deference to the deference already contained in 28 U.S.C. § 2254(d). *Harrington*, 562 U.S. at 105 (stating that, when two deferential standards both apply, review is "doubly" deferential).

In his petition and opposition to the respondent's motion to dismiss, Williams makes similar arguments about the victim's credibility as those he made with respect to ground one. ECF No. 1 at 19–21; ECF No. 11 at 14–22. Those arguments fail for the same reasons already discussed. Further, many of Williams' credibility arguments, such as his reference to the victim's initial statement to the police that she was not sure the object used was a shotgun, were not presented to the trial court as support for Williams' motion to set aside the verdict, and thus the trial court could not have acted unreasonably in failing to credit such arguments. At Williams' sentencing hearing, his counsel argued that the verdict should be set aside based upon the following: (1) the victim had told law enforcement that Williams raped her and that their son was a result of that rape, an assertion she later recanted; (2) the victim had no medical evidence that Williams had broken her ribs at some point in the past, nor for her assertion that she required a colostomy bag following the shotgun incident; (3) phone records indicated the victim contacted Williams numerous times after the June 2013 incident;[14] and (4) the 2008 incident was dropped by the Commonwealth and not prosecuted until 2013. R. 255–58. Williams reiterates these arguments in his petition and opposition to the motion to dismiss. ECF No. 1 at 19–21; ECF No. 11 at 14–22.

---

[14] Phone records introduced at trial showed that the victim called Williams 362 times in a short time period in July 2013. R. 160–62.

Both the trial court and the court of appeals focused on the victim's allegedly recanted statement about being raped.[15] R. 260–61; Va. App. at 5. The court of appeals noted that the Commonwealth disclosed those statements to defense counsel in advance of Williams' trial. Va. App. at 9. The court of appeals also noted that "[d]efense counsel stated that he did not ask the victim about the statements during cross-examination due to what he expected the victim to say," and that it was trial strategy not to ask about those statements. *Id.* The court of appeals held that the trial judge did not err in denying the motion to set aside the verdict. *Id.*

That determination was consistent with clearly established federal law and was not an unreasonable determination of the facts. As discussed before, Williams was not charged with rape, making the victim's rape allegations an issue of her general credibility, an area in which this Court must tread lightly given the trial court's better vantage point. In any case, it is unknown what the victim would have said on cross-examination; indeed, attorney Robinson's statement that he did not question the victim because of a concern about what she would have said indicates that her hypothetical testimony on this subject may have been to the defense's detriment. This was a matter of trial strategy, and nothing in Williams' argument supports overturning his conviction on this ground.

The court of appeals could have reasonably determined,[16] without running afoul of section 2254, that the trial court committed no error in holding that the remaining arguments did not justify setting aside the verdict. In making such arguments, Robinson relied on facts and

---

[15] The Supreme Court of Virginia held that ground two was barred because it was raised and decided on direct appeal by the court of appeals. R. 286–87.

[16] The court of appeals did not specifically address each component of the argument made before the trial court as to the motion to set aside the verdict. The court of appeals did, however, state that "the trial judge did not err in denying [Williams'] motion to set aside the verdict." Va. App. at 9. That the court of appeals did not explicitly rebut every argument does not justify habeas relief. *Cf. Nunnemaker*, 501 U.S. at 801–02.

alleged inconsistencies that were known and available to the trial court when it rendered its original verdict.

Williams also argues that the trial court abused its discretion in imposing such a lengthy sentence and that the court should have treated the victim's inconsistent statements as mitigating evidence. A state court's abuse of discretion is not a constitutional violation, and thus is not cognizable under federal habeas law. *Cf. Rolen v. Reynolds*, No. 0:15cv2045-BHH, 2016 WL 611086, at *2 (D.S.C. Feb. 16, 2016) (citing *Sinistaj v. Burt*, 66 F.3d 804, 808 (6th Cir. 1995)). Moreover, abuse of discretion is not the standard under federal habeas law; the standard is supplied by section 2254. As long as the appellate court's affirmance was not contrary to, or an unreasonable application of, clearly established law, or an unreasonable determination of the facts, relief pursuant to section 2254 is unwarranted. Williams has not shown that the court of appeals acted contrary to section 2254's command. The court of appeals found that "[the] sentence was within the ranges set by the legislature," "the trial judge reviewed [Williams'] criminal record" and determined that Williams "had been convicted of assaulting family members since 1998," and that "[w]hether the victim gave inconsistent statements was not relevant to an appropriate punishment for the crimes [Williams] committed." Va. App. at 9–10. That was a reasonable determination. That the victim may have made some inconsistent statements is relevant to whether Williams committed the crime. After the court determined beyond a reasonable doubt that he did commit the crime, however, such inconsistencies can hardly be viewed as mitigating evidence for the purposes of sentencing.

While Williams has not specifically invoked the Eighth Amendment's prohibition against cruel and unusual punishment, in deference to his *pro se* status, the Court will consider it. The Eighth Amendment, which provides that "[e]xcessive bail shall not be required, nor excessive

fines imposed, nor cruel and unusual punishments inflicted," "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284 (1983).   Nevertheless, successful challenges on this ground are exceedingly rare.  The Supreme Court has stated that "federal courts should be 'reluctan[t] to review legislatively mandated terms of imprisonment' . . . and . . . 'successful challenges to the proportionality of particular sentences' should be 'exceedingly rare.'"  *Hutto v. Davis*, 454 U.S. 370, 374 (1982) (quoting *Rummell v. Estelle*, 445 U.S. 263, 272, 274 (1980)).  The Fourth Circuit noted in 2014 that, "[s]ince the decision in *Solem* [in 1983], no defendant before the Supreme Court has been successful in establishing even a threshold inference of gross disproportionality." *United States v. Cobler*, 748 F.3d 570, 576 (4th Cir. 2014).  In *Harmelin v. Michigan*, the Supreme Court upheld a life sentence without the possibility of parole for a defendant convicted of possessing 672 grams of cocaine, even without the consideration of mitigating factors, stating that "[s]evere, mandatory penalties may be cruel, but they are not unusual in the constitutional sense."  501 U.S. 957, 994 (1991).  "The law of this circuit is clear that, generally, a sentence imposed by a state court which does not exceed the statutory maximum is not reviewable in a federal habeas corpus proceeding."  *Ledford v. Hinton*, 563 F. Supp. 785, 786–87 (W.D.N.C. 1983) (citing *Stevens v. Warden*, 382 F.2d 429, 433 (4th Cir. 1967)).

"Inanimate or animate object sexual penetration is a felony punishable by confinement in the state correctional facility for life or for any term not less than five years."  Va. Code Ann. § 18.2-67.2(B).  Malicious wounding, a Class 3 felony, Va. Code Ann. § 18.2-51, is punishable by "a term of imprisonment of not less than five years nor more than 20 years."  Va. Code Ann. § 18.2-10(c).  Assault and battery against a family member, third offense, is punishable by "a

term of imprisonment of not less than one year nor more than five years." Va. Code Ann. §§ 18.2-10, 18.2-57.2. Finally, petit larceny is punishable by "confinement in jail for not more than twelve months and a fine of not more than $2,500." Va. Code Ann. §§ 18.2-11, 18.2-96. While the sentencing judge imposed the maximum sentence for each of Williams' crimes, *Commonwealth v. Williams*, No. CR13-3532, CR13-4706, sentencing order at 2 (Va. Cir. Jan. 29, 2015), inasmuch as the sentences imposed were within the range of sentences prescribed by the legislature, the appellate court's decision upholding the same was not contrary to clearly established law.

**D.  Ground three of Williams' petition, that the Commonwealth withheld exculpatory evidence, is procedurally defaulted and Williams has not demonstrated cause and prejudice to overcome such default.**

In ground three, Williams argues that the prosecutor failed to provide him with exculpatory evidence in violation of his Fourteenth Amendment rights. ECF No. 1 at 21–22. Specifically, Williams argues that the Commonwealth withheld eight pages summarizing two law enforcement interviews of the victim conducted in December 2008 and pertaining to the sexual penetration and malicious wounding charges. ECF No. 1 at 21–22. In addressing this claim, the Supreme Court of Virginia held that, because Williams could have raised this issue at trial or on direct appeal and did not do so, the claim was barred. R. 287 (citing *Slayton v. Parrigan*, 205 S.E. 2d 680, 682 (Va. 1974)).

### 1.  Ground three is procedurally defaulted.

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Under this doctrine, "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for

the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). "A state procedural rule is adequate if it is regularly or consistently applied by the state courts." *McNeill v. Polk*, 476 F.3d 206, 211 (4th Cir. 2007) (citing *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988)). A state procedural rule is independent "if it does not depend on a federal constitutional ruling." *Id.* (citing *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)). "A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1).

The Supreme Court of Virginia held that, because Williams could have raised this issue at trial or on direct appeal and did not do so, the claim was barred. R. 287 (citing *Slayton*, 205 S.E.2d at 682). In *Slayton*, the Supreme Court of Virginia held that, because "the original function of the writ of habeas corpus was to provide an inquiry into jurisdictional defects," when a prisoner was "afforded a fair and full opportunity to raise" a non-jurisdictional issue at trial or on direct appeal, such an issue is not cognizable on a petition for a writ of habeas corpus. 205 S.E. 2d at 682. In short, "[a] petition for a writ of habeas corpus may not be employed as a substitute for an appeal or a writ of error." *Id.* The Fourth Circuit has repeatedly held that the procedural default rule announced in *Slayton* constitutes an adequate and independent state law ground for decision. *Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998); *Mu'Min v. Pruett*, 125 F.3d 192, 196 (4th Cir. 1997). Therefore, ground three is procedurally defaulted.

### 2. Williams cannot overcome procedural default.

A petitioner may overcome procedural default and obtain federal merits review, however, if he can "demonstrate cause and prejudice for the default or demonstrate that failure to review the claims will result in a fundamental miscarriage of justice." *Edwards v. Johnson*, No. 2:10cv339, 2010 WL 5825427, at *3 (E.D. Va. Dec. 15, 2010) (citing *Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996)).

Williams argues that he did not raise the issue at trial or on direct appeal because he had ineffective assistance of counsel. ECF No. 11 at 26–27. Constitutionally-ineffective assistance of counsel may constitute cause to excuse procedural default. *Wright v. Angelone*, 151 F.3d 151, 160 n.5 (4th Cir. 1998). Williams' state habeas petition argues that trial counsel was ineffective for failing to compel discovery of the missing pages of the victim's interviews. R. 54. Accordingly, the Court will determine whether Williams' ineffective assistance claim excuses his procedural default.

To review a claim of ineffective assistance of counsel, the Court must apply "a doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quotation omitted). The applicable standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687–700 (1984), requires a petitioner to show that his defense counsel provided assistance that (1) fell below an objective standard of reasonableness, and (2) prejudiced petitioner as a result. To establish that counsel's performance fell below an objective standard of reasonableness, petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. In doing so, petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of

reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).

To establish prejudice, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This requires petitioner to establish "probability sufficient to undermine confidence in the outcome," rather than a mere showing that "the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693–94. A federal habeas court need not address both cause and prejudice if the defendant makes an insufficient showing on either one. *Id*. at 697. Because petitioner presents these claims in a petition for federal habeas review under section 2254, he must show that the state court's dismissal of his ineffective assistance of counsel claims was contrary to, or an unreasonable application of, the *Strickland* standard, or was predicated upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

The Supreme Court of Virginia held that Williams' ineffective assistance of counsel claim failed to satisfy either prong of the *Strickland* test, because counsel had no reason to believe the missing pages contained exculpatory evidence, and Williams failed to articulate what exculpatory information those pages would have shown.[17] R. 287–88.

The Supreme Court of Virginia properly identified and reasonably applied the *Strickland* standard. Williams has not shown why attorney Robinson should have believed the withheld

---

[17] In so ruling, the Supreme Court of Virginia also cited to Rule 3A:11(b)(2) of the Virginia Rules of Criminal Procedure. R. 288. This rule, while authorizing discovery by an accused upon the filing of an appropriate motion of items reasonably sought and material to the defense, bars discovery of non-exculpatory statements made by the Commonwealth's witnesses to agents of the Commonwealth and reports documenting the same. Thus, to the extent Williams had a claim to access the interview report, such a claim was necessarily limited by rule.

pages contained exculpatory information.[18]  Williams speculates that the detective who interviewed the victim may have gone to the victim's bedroom and found no incriminating evidence, such as a bloody shotgun, and that this information would be contained in the missing pages. ECF No. 11 at 31–33.  Williams bases this speculation largely on the information contained in the disclosed pages that the detective had some doubts that a shotgun, as opposed to an umbrella or other object, was used. ECF No. 11 at 31–32, 58–59.  Put another way, Williams uses exculpatory information the Commonwealth provided him to speculate that the Commonwealth withheld other exculpatory information.  This is a thin basis for speculation, especially because the detective did not express doubts about the incident taking place, nor did he express doubt that a firearm was used after the victim explained that she, in fact, saw the firearm.

Williams argues that Robinson could not have made a strategic decision without knowing all the facts about the victim's statement to law enforcement. ECF No. 11 at 33–34.  While it is true that no evidence of a bloody shotgun or bloody bedsheets was presented at trial, it does not necessarily follow that the missing pages would have provided further exculpatory evidence. Williams also argues that Robinson should have suspected exculpatory information given the victim's "bizarre behavior." ECF No. 11 at 33.  However, Robinson could have believed that the Commonwealth turned over two pages because they contained exculpatory information, and did not turn over the other eight pages because they did not contain exculpatory information.

Williams quotes the U.S. Supreme Court in saying that "'[t]here are three components of a true *Brady* violation:  The evidence at issue must be favorable to the accused, either because it

---

[18] Robinson provided an affidavit in this case, where he states that "[i]t is not uncommon to receive excerpts of interviews in the discovery process" and that he "had neither knowledge or suspicion that there was any exculpatory information withheld." ECF No. 7-1 at 1.

is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" ECF No. 11 at 25 (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). Williams has not shown that the evidence at issue is favorable to him because he has not shown the nature of the evidence. However, even if Williams is correct that the missing pages revealed that the detective had, at some point, searched the victim's bedroom and found neither bloody bedsheets nor a bloody shotgun, Williams still would not have established prejudice. First, such evidence would not have the powerful force Williams claims. No bloody shotgun or bloody bedsheets were presented to the trial court, making it already obvious to the trial court that no such items were recovered during the Commonwealth's investigation. Further, Williams acknowledges that there was a copious amount of blood and that the Commonwealth produced evidence of the same. *See* ECF No. 11 at 5 (referencing Commonwealth's exhibit 7 showing blood-soaked pants, shirt, and back of a vehicle). This large amount of blood is also likely more consistent with forceful penetration than with Williams' described accident.

Second, there is not a reasonable probability that such evidence would have overcome the evidence presented against Williams. Dr. McDermott testified that a great deal of force would be required to damage the victim's "well[-]protected" organs, R. 183, testimony which is consistent with the victim's, but not with Williams', account. Also, Williams admitted on a jailhouse call that he could not get out of the malicious wounding charge because "it happened." R. 226. This evidence bolstered the victim's testimony, which the trial court found to be more believable than Williams' account. Because Williams has not established prejudice, his ineffective assistance of counsel claim cannot help him avoid procedural default. Ground three should be dismissed.

**E.    Williams has not shown that the Virginia Supreme Court's determination regarding the effectiveness of his counsel was contrary to, or unreasonably applied, clearly established federal law or was based upon an unreasonable factual determination.**

In ground four, Williams alleges that attorney Robinson provided ineffective assistance of counsel.  Williams raises the following arguments for ineffectiveness:  (a) Robinson did not challenge the Commonwealth's discovery response that the defense had been provided a copy of medical records belonging to a "Tellamy Street"; (b) Robinson did not contest the Commonwealth's failure to provide the other eight pages of the victim interviews; (c) Robinson did not obtain exculpatory evidence related to the victim's reticence to prosecute in 2009; (d) Robinson did not effectively impeach the victim; (e) Robinson failed to address inconsistent evidence given by the victim's therapist; (f) Robinson did not object to the introduction of the therapist's written statements, which Williams claims contained false information; and (g) Robinson did not properly consult with Williams regarding (i) the decision not to challenge the victim's allegations that Williams had raped her on multiple occasions; (ii) the decision not to compel discovery of the entire victim interview; (iii) the decision not to subpoena "Sherry Morris"; and (iv) the decision not to subpoena a detective who had expressed doubt that the victim's injuries were caused by a shotgun. ECF No. 1 at 22–24.

Williams first argues that Robinson was ineffective for failing to challenge the Commonwealth's statement about Tellamy Street's medical records.  ECF No. 1 at 23.  The Commonwealth's response to the defense's motion for discovery and inspection stated that "[a] copy of Tellamy Street's medical records were provided to the defense previously."  ECF No. 7-1 at 3.  Williams claims that he does not know who Tellamy Street is, and questions whether Street's medical records were used by the state court to support Williams' convictions.  ECF No. 1 at 23.

The Supreme Court of Virginia held that this argument satisfied neither prong of the *Strickland* test, because nothing in the trial record suggested that the court considered medical records belonging to a Tellamy Street. R. 287. This determination did not violate section 2254(d). This Court has reviewed the trial transcript in its entirety, and found no mention of Tellamy Street. The only mention of Tellamy Street in the record is the single, apparently mistaken, statement by the Commonwealth in its discovery response. The Supreme Court of Virginia properly articulated the *Strickland* standard and reasonably applied it. There is no evidence that Robinson's performance in not pursuing evidence of Tellamy Street's records was deficient, and no evidence that had he done so, the trial result would probably have been different.

Next, Williams contends that he was denied the effective assistance of counsel when Robinson failed to compel discovery of the remaining eight pages of the victim's interviews with law enforcement. ECF No. 1 at 23. The Court addressed this argument in the preceding section. Williams has not demonstrated ineffective assistance of counsel based on this ground.

Williams argues that the Commonwealth's response to Williams' discovery motion clearly stated in paragraph nine that it had exculpatory evidence and that Robinson was ineffective for failing to obtain that evidence. ECF No. 1 at 23; ECF No. 11 at 34. Paragraph nine of the Commonwealth's response states, "[t]he Commonwealth is unaware of any exculpatory information." ECF No. 7-1 at 4. Handwriting underneath this statement indicates, "although [the victim] told the previous prosecutor that she did not want to prosecute the case." *Id*. The exculpatory evidence referenced in paragraph nine, therefore, is that the victim initially did not want to prosecute the incident involving the shotgun when it occurred.

The Supreme Court of Virginia once again determined that this ground satisfied neither the performance nor prejudice prongs of *Strickland*. R. 288. The court stated that Williams failed to identify exculpatory information that would have been revealed, and that the victim was examined at trial about her initial reluctance to prosecute the incident. *Id*. Accordingly, the evidence was before the trial court, and Robinson's performance was not ineffective.

Under section 2254(d)(1), the Supreme Court of Virginia properly identified and applied the *Strickland* standard. The fact that the victim did not want to press charges in 2009 was well-known to Williams and Robinson. Robinson questioned her about it at trial:

> Q: And charges were brought by the Commonwealth back in 2009, correct?
>
> A: Yes.
>
> Q: All right. Why didn't you want to follow through with charges in 2009?
>
> A: I was in denial at first. . . . I was in denial that—it's stupid. I thought he was sorry and I thought it was going to stop. I was just stupid. But it didn't stop.

R. 140.

Williams has not identified any exculpatory information that was not already known to him, his attorney, or the trial court, that would have resulted in the reasonable probability of a different outcome. There is nothing in paragraph nine that refutes the victim's testimony or indicates the existence of evidence that would refute the victim's testimony. Because the Supreme Court of Virginia reasonably applied *Strickland*, this ground fails.

Williams argues that Robinson failed to impeach the victim's testimony. ECF No. 1 at 23. Once again, Williams focuses on the missing pages of the victim's interviews, claiming that Robinson could not have adequately impeached the victim without those eight pages. ECF No.

11 at 36. The Supreme Court of Virginia held that this claim satisfied neither prong of *Strickland*, because Robinson cross-examined the victim on numerous inconsistent statements, including her initial equivocation about what object was used in the penetration, her lack of memory as to which eye Williams allegedly struck, and her testimony regarding the 362 calls she made to Williams on one day in 2013. R. 289. The court further noted that Williams failed to articulate additional impeachment material that Robinson did not use. *Id.*

The Supreme Court of Virginia properly identified and reasonably applied *Strickland*. As previously stated, Williams has not shown deficient performance or prejudice in connection with the missing pages   The trial transcript shows that Robinson engaged in extensive cross-examination of the victim, covering key inconsistencies Williams raises in his petition, such as that the victim was not forthcoming with police from the start about knowing a firearm was used, that the victim could not describe the firearm, that the victim made a mistake as to which eye Williams struck, and that the victim called Williams incessantly in July 2013. Indeed, Williams' arguments regarding the sufficiency of the evidence rely in no small part on evidence adduced by Robinson during cross-examination. "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington*, 562 U.S. at 110 (internal citations omitted). Williams has not shown that Robinson's impeachment of the victim was constitutionally deficient or resulted in prejudice against him.

Williams argues that Robinson failed to address inconsistencies presented by the victim's therapist, Audrey L. Slavin, Psy.D., relating to allegations that Williams had raped the victim and that their son was conceived as a result of that rape. ECF No. 1 at 23–24; *see* ECF No. 7-1 at 17. A letter from Dr. Slavin submitted as Commonwealth's exhibit 2, R. 149, states that the victim was "pregnant from [Williams'] having raped her." ECF No. 7-1 at 17. The Supreme Court of

Virginia held that Williams failed to explain how that portion of Dr. Slavin's letter was inconsistent with the evidence, given the victim's testimony on cross-examination that she was "raped plenty of times" by Williams. R. 157, 289. Accordingly, the Supreme Court of Virginia ruled that Williams did not satisfy the performance or prejudice prongs of *Strickland*. R. 289.

The Supreme Court of Virginia properly identified and reasonably applied *Strickland*. To the extent the "inconsistency" is that the victim later recanted her statement that her son with Williams was the result of rape, Robinson addressed that issue with the trial court in his motion to set aside the verdict. R. 256–57. Otherwise, Williams does not explain how Dr. Slavin's note was inconsistent with the evidence, nor does he explain how further probing of that assertion would probably have resulted in a different outcome at trial. Once again, the Court notes that Williams was not charged with rape. To the extent that such comments may have been prejudicial, Williams was tried by a judge, rather than by a jury. Judges, by virtue of their legal training, are more readily able to compartmentalize relevant and irrelevant evidence, and are less likely to convict a criminal defendant of one crime simply because evidence of another crime has been offered. *See Flannery v. City of Norfolk*, 218 S.E.2d 730, 735 (Va. 1975) ("judges are suited by training and experience to disregard potentially prejudicial comments"); *Akers v. Commonwealth*, 216 S.E.2d 28, 31 (Va. 1975) ("a Judge—unlike a jury—by reasons of his learning, experience and judicial discipline, is uniquely capable of distinguishing the issues and of making an objective determination") (internal citation omitted). Because Williams did not show prejudice, this ground fails.

Williams argues that Robinson failed to object to the therapist's written letter being introduced into evidence. ECF No. 1 at 24. Williams argues that Robinson should have objected to the letter's admission because "it contained clearly false accusations." ECF No. 11 at 43–44.

28

The letter, written by Dr. Slavin on June 27, 2014 stated that the victim began treating with her in 2009 after her boyfriend "rammed a rifle up her rectum." ECF No. 7-1 at 17.  The letter also stated that the victim's boyfriend had repeatedly battered and raped her during the course of the relationship, and that she feared retaliation if she pursued assault charges against him.  *Id.*  Dr. Slavin also stated that the victim was receiving "threats and retaliation against her" from her boyfriend in connection with the 2014 trial.  *Id.*  Dr. Slavin continued that the victim "felt fearful and under his control [and] had difficulty keeping him out of her life."  *Id.*

The Supreme Court of Virginia held that this argument failed the performance and prejudice prongs of *Strickland*, because Williams failed to identify which statements were false, explain how counsel could have used the alleged falsity to prevent the document's admission, or articulate how the outcome would have been different had the statements not been admitted.  R. 290.  Moreover, an objection based merely on a belief that the evidence being offered was false would likely not have been sustained absent an actual violation of the rules of evidence.  *Id.*

The Supreme Court of Virginia properly identified and reasonably applied *Strickland*, and did not unreasonably interpret the facts.  A mere assertion of the letter's falsity would not have prevented its admission.  While there may potentially have been other grounds upon which defense counsel could have relied in objecting to the letter,[19] the Supreme Court of Virginia considered the other "extensive evidence" against Williams, and determined that the evidence

---

[19] Robinson's affidavit states that he stipulated to admission of the letter for tactical reasons, namely, to avoid the therapist appearing and testifying, which he believed could have been more detrimental to Williams' case.  ECF No. 7-1 at 1.  The Court will avoid passing judgment on this tactical decision, and focus instead on the lack of prejudice.  A federal habeas court need not address both cause and prejudice if the defendant makes an insufficient showing on either one. *Strickland*, 466 U.S. at 697.  The Court does note, however, that if defense counsel has made a reasonable investigation into the case and potential defenses, "the strategic choices made as a result will seldom if ever be found wanting." *Strickland*, 466 U.S. at 681 (internal quotation marks omitted).

against him could have supported the convictions independent of Dr. Slavin's letter.  R. 290.
This determination was not deficient under section 2254.  *Cf. Jones v. Clarke*, 783 F.3d 987,
992–93 (4th Cir. 2015) (holding that a habeas petitioner failed to demonstrate prejudice, even
where the trial judge specifically relied on improper fingerprint evidence, because the other
evidence of guilt was sufficient to support a conviction).

Williams argues that Robinson made numerous decisions without adequately consulting
with him.  ECF No. 1 at 24.  He argues that Robinson did not consult with him about the
decision not to challenge the victim's statements that Williams had raped her on numerous
occasions.  *Id.*  The Supreme Court of Virginia held that this argument satisfied neither prong of
*Strickland*, because Robinson did challenge the victim's claims of rape and Williams did not
articulate what more Robinson should have done.  R. 290–91.

The Supreme Court of Virginia properly identified and reasonably applied *Strickland*.
Robinson did cross-examine the victim about why she never reported those rapes to the police.
R. 46–48.  Given that Williams was not charged with rape, it was not clearly deficient for
Robinson to focus the majority of his cross-examination on the charged offense, rather than the
uncharged ones.  Williams has also not shown how more probing questioning on the victim's
rape allegations would have produced a reasonable probability of a different result.

Next, Williams argues that Robinson did not consult him about the decision not to
compel discovery of the missing pages of the victim's interviews.  ECF No. 1 at 24.  The
Supreme Court of Virginia properly identified and reasonably applied *Strickland* in concluding
that Williams' argument satisfied neither prong.  R. 291.  Given that counsel's performance in
failing to compel the documents was not ineffective, a lack of communication about that decision
would not render that performance deficient.

30

Williams argues Robinson was ineffective for not consulting with Williams about the decision not to subpoena Sherry Morris. ECF No. 1 at 24. Williams states that Sherry Morris would have provided testimony to support impeachment of the victim. ECF No. 1 at 24. According to an affidavit filed by Robinson, Williams actually requested that he subpoena a Sherri McCants. ECF No. 7-1 at 1. Robinson avers that he did so on more than one occasion and that she did not appear for trial. *Id.* The record reflects that Robinson requested the circuit court to issue subpoenas for Sherri McCants on April 16, May 6, June 6, and August 19, 2014. *Id.* at 11, 13, 14, 16. Robinson also sent Williams a letter informing him that Ms. McCants did not previously appear despite a subpoena, that Robinson had filed a motion to continue, and that the trial court had informed him that the defense must proceed with or without Ms. McCants. *Id.* at 15. The Supreme Court of Virginia held that this argument satisfied neither *Strickland* prong, because Williams failed to articulate what evidence Ms. Morris would have provided that would have probably resulted in a different trial outcome. R. 291.

Once again, that determination was a reasonable application of *Strickland*. Williams' response to the motion to dismiss provides no further elaboration beyond the statement "Williams requested Robinson to subpoena Ms. Sherry Morris, who had evidence to support the impeachment of [the victim's] testimony, involving the incidents at bar." ECF No. 11 at 44. Williams does not state what evidence Ms. Morris would have provided or how that evidence would have aided him. Nor does he respond to Robinson's statements about Ms. McCants. Further, Williams represented during his not guilty plea colloquy prior to trial that he had discussed with Robinson the names of any witnesses on his behalf and that all of his witnesses

were present or otherwise available for trial.[20]   R. 118.   Absent more, Williams has not

demonstrated ineffective assistance of counsel under *Strickland*.

Williams also argues that Robinson did not consult him about the decision not to

subpoena the detective who had doubted that the victim's injuries were caused by a shotgun.

ECF No. 1 at 24.  In the report of the first victim interview, the detective noted the following:

> When asked why she thought it was a firearm, she said Williams did possess
> firearms and she couldn't think of anything else it would be.  I asked if it could
> have possibly been an umbrella.  She said she doesn't own anything like that.

ECF No. 7-1 at 5.  In reporting the second interview, the detective noted:

> I advised [the victim] I was still working on her case and I was trying to figure out
> what Williams must have used that could have penetrated her pants and done so
> much damage.  I told her maybe it wasn't a firearm, maybe it would have caused
> more damage with a front site. . . . [The victim] stated it was probably a firearm.  I
> pressed her further on how she knew this.  She finally admitted she knew it was a
> firearm, she saw it.

*Id.* at 6.  The Supreme Court of Virginia held that this argument failed under both prongs of

*Strickland*, because Robinson could have reasonably determined that the detective's opinion

---

[20] He also represented that he had enough time to discuss the charges with Robinson and any
defenses he might have had and that he was entirely satisfied the Robinson's services.  R. 118–
19.  The Supreme Court of Virginia has stated:

> Borrowing from the rule adopted by the United States Court of Appeals for the
> Fourth Circuit denying evidentiary hearings on . . . habeas petitions, we hold that
> the truth and accuracy of representations made by an accused as to the adequacy
> of his court-appointed counsel . . . will be considered conclusively established by
> the trial proceedings, unless the prisoner offers a valid reason why he should be
> permitted to controvert his prior statements.

*Anderson v. Warden of Powhatan Corr. Ctr.*, 281 S.E.2d 885, 888 (Va. 1981) (citing *Edmonds v.
Lewis*, 546 F.2d 566, 568 (4th Cir. 1976)); *see also Jones v. Taylor*, 547 F.2d 808, 810 (4th Cir.
1977).  In addition to the discussion throughout this section, Williams has not provided any
reasons he should be allowed to controvert his statements made during his not guilty plea
colloquy.

about the cause of the victim's injuries would have been inadmissible under Rule 2:602.[21]   R. 292.

That determination was reasonable.   Williams fails to show that, had there been consultation, Robinson would have subpoenaed the detective.   He fails to show that, had Robinson subpoenaed the detective, his testimony would have contradicted the victim's testimony.   He fails to show that, had the detective speculated about whether a firearm was used, such testimony would have been admitted.   He fails to show that, had it been admitted, it would have swayed the trier of fact.   In short, Williams falls below a showing of a "reasonable probability" that the result of the proceeding would have been different.

For these foregoing reasons, Williams has failed to show that he is entitled to habeas relief due to ineffective assistance of counsel.

### III.   RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that respondent's motion to dismiss, ECF No. 5, be **GRANTED**, and the petition for a writ of habeas corpus, ECF No. 1, be **DENIED**.

### IV.   REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of

---

[21] Virginia Rule of Evidence 2:602, titled "Lack of Personal Knowledge," provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

the Federal Rules of Civil Procedure.  Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail.  A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.  *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.  A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

Robert J. Krask
United States Magistrate Judge

Robert J. Krask
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
July 2, 2018